# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JAN BECKER,
on behalf of
COLLEEN MCCARTNEY,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
               Defendant.

1:18-cv-14162-NLH

**OPINION**

---

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

SHAWN CHEREE CARVER
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding the application of Colleen Marie McCartney for

Disability Insurance Benefits ("DIB")[1] under Title II of the Social Security Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that McCartney was not disabled at any time since her alleged onset date of disability, July 1, 2012. For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On July, 2013, Colleen Marie McCartney protectively filed an application for DIB,[2] alleging that she became disabled on July 1, 2012.[3] During the pendency of her application, McCartney died on May 26, 2015.[4] McCartney's mother, Jan Becker,

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

[3] McCartney was born on September 29, 1981 and was 30 years old at the time of her alleged onset date.

[4] McCartney's death was determined to be accidental due to fentanyl and alprazolam toxicity. She was 33 years old. (R. at 493).

substituted as a party to prosecute McCartney's claim for benefits on August 11, 2016.  Following the same path as the ALJ, this Court will refer to McCartney as "Plaintiff" because it is her alleged disability and claim for benefits that is the subject of this appeal.

In her application for DIB, Plaintiff claimed that she could no longer work as a registered nurse due to polysubstance use disorder, history of seizure disorder, and several mental impairments.  Plaintiff's initial claim was denied on January 15, 2014 and upon reconsideration on January 28, 2014.  On November 11, 2014, Plaintiff requested a hearing before an ALJ, which was held on May 2, 2017.  The ALJ issued an unfavorable decision on July 28, 2017.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on July 19, 2018, making the ALJ's July 28, 2017 decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by

"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);

Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.

Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,

970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means

more than "a mere scintilla."  Richardson v. Perales, 402 U.S.

389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305

U.S. 197, 229 (1938)).

Substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion."  Id.  The inquiry is not whether the reviewing

court would have made the same determination, but whether the

Commissioner's conclusion was reasonable.  See Brown v. Bowen,

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent medical

evidence and explain his conciliations and rejections."  Burnett

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all of the non-

medical evidence before him.  Id. (citing Van Horn v. Schweiker,

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not

"empowered to weigh the evidence or substitute its conclusions

for those of the fact-finder." Williams, 970 F.2d at 1182.
However, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the
proper legal standards. Sykes, 228 F.3d at 262; Friedberg v.
Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris,
508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months. See 42 U.S.C. §
1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled
only if her physical or mental impairments are of such severity
that she is not only unable to perform her past relevant work,
but cannot, given her age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which she lives, or whether a
specific job vacancy exists for her, or whether she would be

hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)

(emphasis added).

The Commissioner has promulgated regulations[5] for

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

process is summarized as follows:

> 1.   If the claimant currently is engaged in substantial
>      gainful employment, she will be found "not disabled."
>
> 2.   If the claimant does not suffer from a "severe
>      impairment," she will be found "not disabled."
>
> 3.   If the severe impairment meets or equals a listed
>      impairment in 20 C.F.R. Part 404, Subpart P, Appendix
>      1 and has lasted or is expected to last for a
>      continuous period of at least twelve months, the
>      claimant will be found "disabled."
>
> 4.   If the claimant can still perform work she has done in
>      the past ("past relevant work") despite the severe
>      impairment, she will be found "not disabled."
>
> 5.   Finally, the Commissioner will consider the claimant's
>      ability to perform work ("residual functional
>      capacity"), age, education, and past work experience
>      to determine whether or not she is capable of
>      performing other work which exists in the national
>      economy.  If she is incapable, she will be found
>      "disabled."  If she is capable, she will be found "not
>      disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

---

[5] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Neither party states that
these amendments apply in this case.  Plaintiff does cite to SSR
05-2p, which was rescinded effective May 18, 2018, but that
regulation was still in effect at the time of the ALJ's July 17,
2017 decision.

therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 22, 2013. The ALJ found that even though Plaintiff's alleged onset of disability was July 1, 2012, Plaintiff worked from January 20, 2013 through March 22, 2013 and earned income at the SGA level, and she earned income at the SGA level for the six months in 2012 before she claimed disability. The ALJ therefore determined that the relevant time period during which Plaintiff must show she was disabled was March 23, 2013 until her death,

and not as of July 1, 2012 as Plaintiff initially claimed.

At step two, the ALJ found that Plaintiff's impairments of substance abuse and history of seizures were severe, but she did not find Plaintiff's mental impairments to be severe. The ALJ then considered steps three through five in two parts. First, the ALJ considered Plaintiff's two severe impairments – substance abuse and seizure disorder – together.[6] When considered together, at step three the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. At step four, the ALJ determined that Plaintiff's residual functional capacity ("RFC") did not allow her to work at her past job as a registered nurse. At step five, the ALJ determined that no jobs in the national economy existed that Plaintiff could perform.

Second, the ALJ considered Plaintiff's seizure disorder separate from her substance abuse.[7] The ALJ again found that

---

[6] The ALJ did not consider Plaintiff's mental impairments although she was obligated to even if they were considered not severe. This is the primary basis for Plaintiff's appeal, which the Court discusses at length below.

[7] An individual cannot be found disabled if drug or alcohol abuse was a contributing factor material to the Commissioner's determination that the individual is disabled. When drug addiction is at issue, and an individual is found disabled at any step of the sequential evaluation process, the ALJ must determine whether drug addiction is a "contributing factor material to the determination of disability." 20 C.F.R. §§

Plaintiff's seizure disorder did not equal the severity of one of the listed impairments. The ALJ determined a different RFC based on her seizure disorder alone and found that if Plaintiff stopped her substance abuse she would be able to perform her past work as a registered nurse, thus rendering Plaintiff not disabled under Social Security regulations.[8]

Plaintiff argues that the ALJ erred in four ways: (1) the ALJ improperly determined that Plaintiff's brief return to work constituted SGA such that it changed the relevant time period from July 1, 2012 through Plaintiff's death to March 23, 2013 through Plaintiff's death; (2) at Step Two the ALJ failed to consider Plaintiff's mental impairments as severe, which is supposed to be a *de minimis* screening tool, and then the ALJ

_____

404.1535(a), 416.935(a). To make this determination, the ALJ must decide whether a claimant would still be disabled if she stopped abusing drugs. 20 C.F.R. §§ 404.1535(b), 416.935(b). If a claimant would not be disabled if she stopped abusing drugs, then drug addiction is material to the determination of disability and the claimant will not be found disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). Conversely, if a claimant would still be disabled independent of drug abuse, then drug addiction is not considered material to the determination of disability and the claimant will be found disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(a).

[8] Because the ALJ concluded that Plaintiff was capable of performing her past relevant work, the ALJ did not need to continue to step five of the sequential step analysis. Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

erred in her RFC determination by not considering Plaintiff's
mental impairments, even if they were not considered severe, in
combination with her seizure disorder; (3) the ALJ erred in not
explaining on what basis she found that Plaintiff would be
substantially more limited due to polysubstance abuse than by
mental illness; and (4) the ALJ improperly discounted the
opinion of Plaintiff's treating psychiatrist.

Plaintiff's brief mainly focuses on the testimony, medical
records, and her treating physician's opinion regarding
Plaintiff's mental impairments, with little emphasis on her
substance abuse, while Defendant's brief focuses mainly on
Plaintiff's substance abuse and social activities, and minimizes
Plaintiff's mental impairments. Looking at the entire record,
as the Court must in deciding whether substantial evidence
supports the ALJ's decision, it is evident that the ALJ wholly
discounted that Plaintiff suffered from any mental impairment,
and instead found that Plaintiff's substance abuse was the sole
cause of her inability to perform her job as a nurse. Indeed,
the ALJ succinctly stated, "[T]he medical evidence
overwhelmingly indicates that the claimant's substance abuse was
the source of all her troubles." (R. at 20.) The Court finds
this conclusion and the ALJ's ultimate decision that Plaintiff
was not disabled to be unsupported by substantial evidence.

Plaintiff began treatment with her psychiatrist, Peter F.

Finelli, D.O., when she was 13 years old, and saw Dr. Finelli for many years until her family could no longer afford to pay for her treatment. (R. at 56.) Plaintiff returned to treatment with Dr. Finelli when Plaintiff was 22 years old, and the record contains progress notes from March 9, 2004 through October 17, 2013, when Plaintiff was 32 years old, with a few gaps in treatment. (R. at 359-397, 474-475, 478-491.) The records relate a diagnosis of bipolar II and borderline personality disorder, and Plaintiff's use of alcohol and drugs other than her prescribed medications.

On October 17, 2013, Dr. Finelli completed a medical source statement. Dr. Finelli listed Plaintiff's conditions: Post-Traumatic Stress Disorder, Bipolar II, Borderline Personality Disorder, and "AA/NA." (R. at 419.) The statement relates Plaintiff's signs and symptoms, as well as her functional limitations and limitations to do unskilled work. (R. at 420-22.) Dr. Finelli indicated that Plaintiff has a "medically documented history of chronic organic mental . . . disorders of at least two year's duration that has caused more than a minimal limitation of ability to do any basic work activity," and she has had "three episodes of decompensation within 12 months, each at least two weeks long." (R. at 422.) Dr. Finelli reported that Plaintiff's condition existed and persisted since at least July 2012. (R. at 425.)

In an undated supplemental questionnaire, Dr. Finelli reported that Plaintiff currently has "drug addiction and/or alcoholism," and that even if she were to cease drug and alcohol use completely, Plaintiff's remaining impairments continued to cause the functional limitations at the level of severity indicated on the medical source statement. (R. at 500.)

The ALJ completely rejected Dr. Finelli's treatment notes and opinion, finding it "remarkable" that neither he nor Plaintiff's mother "seemed to be particularly aware of the nature or extent of the claimant's substance abuse history." (R. at 17.) The ALJ continued:

> Dr. Finelli did not list a diagnosis of substance use disorder in either his original report assessing marked to extreme limitations or the addendum in which he concluded that substance use was not material to the claimant's limitations (Exhibits 11F and 18F). Dr. Finelli's omission is particularly astonishing given the length of his treating relationship with the claimant and the fact that his own records document the claimant's acknowledgment of *extensive* substance abuse. In fact, following a January 2013 evaluation of the claimant, Dr. Finelli himself noted that he was not convinced the claimant's substance use problem wasn't *greater* than what she actually reported (See, in particular, Exhibit 16P at 6).

(R. at 17.)

The ALJ found that Plaintiff's complaints about being depressed constituted "subjective complaints" that were "situational rather than pathological" in nature. (R. at 18.) The ALJ also noted the occasions in the record where Plaintiff

related to feeling well-controlled and her mood stabilized.[9] (Id.)

The ALJ then adopted the findings of the two state consultants, who only reviewed Plaintiff's file in 2014. Both consultants recognized Plaintiff's medically determinable mental impairments, but found that the record was insufficient to establish their severity since Plaintiff's alleged disability onset date. (R. at 19.)

There are multiple problems with the ALJ's findings. First, Dr. Finelli was not unaware of Plaintiff's substance abuse. Dr. Finelli listed "AA/NA" as one of her diagnoses on the medical source statement, which, without any evidence to the contrary, captures Dr. Finelli's treatment notes over many years that recount Plaintiff's use of drugs and alcohol. Dr. Finelli also completed the supplemental questionnaire that stated Plaintiff would still be debilitated by her mental impairments even if she ceased abusing drugs and alcohol.

Second, the ALJ unilaterally deemed Plaintiff's depression

_____

[9] The ALJ further noted that Plaintiff had a documented history of self-cutting behavior, and that her mother testified at the hearing that the behavior continued up until the date of her death, but "the postmortem examination of the claimant revealed that the scars were old." (R. at 18.) The ALJ failed to recount that the medical examiner's report relates in addition to Plaintiff having a history of drug abuse, smoking cigarettes and drinking alcohol to excess, Plaintiff was treated for bipolar disorder. (See R. at 494.)

to be "subjective" and "situational" in complete contradiction of the medical evidence. The medical evidence shows that over many years Plaintiff was prescribed several different medications for her psychiatrist-diagnosed mental impairments to help control her depression and stabilize her mood. The state medical consultants also recognized that Plaintiff suffered from medically determinable mental impairments.

Third, the ALJ cherry picked records and testimony about Plaintiff's "good days" to reject that Plaintiff suffered from any mental impairments, severe or not. Dr. Finelli's treatment notes show, and he relates in his medical source statement, that Plaintiff was prescribed various medications over the years, and Plaintiff's response was initially very good. Dr. Finelli also reported, however, that eventually the medications would stop working. (R. at 419.) This supports Plaintiff's statements and actions during the times when the medications were working, which the ALJ relied upon, but the ALJ failed to consider the other times when the medications were no longer effective.

Finally, the ALJ violated long-established Third Circuit precedent, cited herein, in affording no weight to Dr. Finelli's records and opinions, and affording great weight to the state consultant's opinions.

These errors manifested at step two and during the ALJ's

RFC analysis.[10]  At step two, the ALJ has to "consider the medical severity of a claimant's impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  "The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'"  McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004) (citation omitted).  The severe impairment "must have lasted or must be expected to last for a continuous period of at least twelve months."  20 C.F.R. § 404.1509.  In order to have a severe impairment, the impairment or combination thereof must significantly limit a person's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case.  Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140,

_____

[10] The ALJ's failure to recognize Plaintiff's mental impairments also impacts the step one SGA analysis because it is clear that the ALJ did not consider Plaintiff's mental impairments when she determined Plaintiff's brief return to work to constitute SGA, rather than an "unsuccessful work attempt."  SSR 05-02 ("We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt."); Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("[A]n attempt to work that ultimately fails because of the symptoms of the disability is not substantial gainful activity.").  The Court addresses this additional error below.

145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552-53 (3d Cir. 2005)).

In making the RFC assessment an ALJ is required to consider all evidence before her.  "In doing so, an ALJ may not make speculative inferences from medical reports," she is "not free to employ [her] own expertise against that of a physician who presents competent medical evidence," and "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).  Additionally, a treating physician's opinions are typically entitled to "great weight," and an ALJ may only reduce her reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if she explains his reasoning.  <u>Id.</u> at 439 ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ

not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

The primary error in this case is that despite the extensive documentary evidence showing years of mental health problems with corresponding medications and treatment with a psychiatrist, the ALJ concluded, without citing to any evidence to the contrary, that Plaintiff did not suffer from any mental impairments during the relevant time period, and instead Plaintiff's substance abuse "was the source of all her troubles."  Not only could this be considered an error at the *de minimis* second step of the sequential step analysis, at a minimum, the ALJ erred in her RFC analysis by not considering the impact of Plaintiff's bipolar disorder and borderline personality disorder on her ability to work, even if those conditions were not considered "severe."

Plaintiff was diagnosed with, and was treated for, those mental impairments from at least 2004 through October 17, 2013, which is well within the ALJ's modified relevant time period. The ALJ cannot simply ignore that Plaintiff has documented mental impairments, even if she did not consider them to be "severe" at step two.  Moreover, the ALJ cannot substitute her own lay opinion that Plaintiff's substance abuse caused all her problems over that of Plaintiff's treating psychiatrist.  <u>See</u>

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (finding that
the ALJ improperly supplanted the opinions of the plaintiff's
treating and examining physicians with his personal observation
and speculation, and directing that "in choosing to reject the
treating physician's assessment, an ALJ may not make speculative
inferences from medical reports and may reject a treating
physician's opinion outright only on the basis of contradictory
medical evidence and not due to his or her own credibility
judgments, speculation or lay opinion" (citations and quotations
omitted)). Significantly, the "principle that an ALJ should not
substitute his lay opinion for the medical opinion of experts is
especially profound in a case involving a mental disability."
Id. at 319.

It is also important to note that Plaintiff died on May 25,
2015, two years prior to the hearing before the ALJ. The ALJ
did not have the benefit of two years' worth of additional
medical records or Plaintiff's testimony regarding her mental
impairments. That could cut either way, depending on what would
have occurred during that time, but Plaintiff's inability to
testify on her own behalf during the hearing prevented her from
directly responding to the ALJ's speculations regarding the
existence of Plaintiff's mental impairments and their impact on
her ability to work. This is especially poignant when
considering that "[m]any people with DAA [drug addiction and

alcoholism] have co-occurring mental disorders; that is, a
mental disorder(s) diagnosed by an acceptable medical source in
addition to their DAA.  We do not know of any research data that
we can use to predict reliably that any given claimant's co-
occurring mental disorder would improve, or the extent to which
it would improve, if the claimant were to stop using drugs or
alcohol."  SSR 13-2p.

The Court recognizes that separating a history of mental
disease and a related pattern of substance abuse is a difficult
task even for a medical professional and therefore that much
more challenging for someone trained in the law.  But that is
precisely the problem here.  In sum, there is insubstantial
evidence supporting the ALJ's conclusion that Plaintiff did not
suffer from mental impairments such that those mental
impairments did not need to be considered at all.  Substantial
medical evidence of record demonstrates the completely opposite
conclusion.  On remand, the ALJ should restart the sequential
step analysis at step one with the recognition that Plaintiff
suffered from medically determinable mental impairments.  In
doing so, the ALJ must point to evidence in the record, as
opposed to her own lay opinions, to support her findings at each
step.[11]

---

[11] Plaintiff requests that this Court order the immediate award
of benefits, rather than remand the case for further

**CONCLUSION**

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed. The matter shall be remanded for further consideration consistent with this Opinion.

An accompanying Order will be issued.


Date: September 30, 2019                    s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

proceedings. Although there is a basis in the law that allows a district court to order the payment of benefits instead of remanding the case for further review, a district court must also be certain that a plaintiff is entitled to those benefits. See Gilliland v. Heckler, 786 F.2d 178, 184–85 (3d Cir. 1986) (citations omitted) (explaining that the decision to direct the "award of benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits"); see also INS v. Ventura, 537 U.S. 12, 16 (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ failed to consider Plaintiff's mental impairments at all, the best course is to remand Plaintiff's claim to the ALJ so that the ALJ may properly consider their impact on Plaintiff's ability to work.